EDNA S. PHILLIPS, Plaintiff-Appellee, *v.* SALK, WARD & SALK, INC. *et al.*, Defendants-Appellants.

(Nos. 57023, 57163;

First District (3rd Division)—June 6, 1974.

Mandel and Lipton, Ltd., of Chicago (Alfred R. Lipton and Richard D. Mandel, of counsel), for appellant Salk, Ward & Salk, Inc.

Shaheen, Lundberg and Callaghan, of Chicago (James J. O'Meara, Jr., and James J. Kemp, Jr., of counsel), for appellant All American Life and Casualty Company.

Van Duzer, Gershon, Jordan & Peterson, of Chicago (John B. Van Duzer and Horace W. Jordan, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Edna S. Phillips, brought suit in chancery for the reformation of a term life insurance policy against defendant All American Life and Casualty Company (hereinafter All American) and for damages against All American and defendant Salk, Ward & Salk, Inc. (hereinafter Salk) for the alleged failure to procure and provide the policy intended. After a trial by the court without a jury a decree was entered in favor of plaintiff against defendant All American, ordering reformation, and for a judgment against both defendants in the amount of $18,299. Both defendants have appealed.

Upon appeal, defendant Salk contends that (1) the trial court erred in finding that Salk was engaged to obtain a level term life insurance for plaintiff's decedent; (2) the duty, if any, was extinguished by the decedent's personally securing the policy from defendant All American; and (3) the policy which issued fully complied with the term life insurance requirement contained in the application for a mortgage loan.

Defendant All American contends in its appeal that the trial court erred (1) in excluding from the evidence the mortgage loan contract between All American and plaintiff and her decedent; (2) in finding that the insurance contract between All American and plaintiff's decedent was the result of a mutual mistake and subject to reformation; and (3) in finding that All American breached its obligation to provide the term insurance contemplated by the parties. The facts follow.

Plaintiff, Edna S. Phillips, is the widow of Don R. Phillips; together they were the co-obligors upon a certain note executed by them evidencing a loan made to them by defendant Salk and sold by Salk to All American. The note was secured by a mortgage on a commercial building and land and, as further security, by a life insurance policy on the life of Don R. Phillips issued by All American and assigned to it. Decedent and his wife, plaintiff, were the sole owners of a Michigan corporation. In 1963, decedent was approximately 57 years of age and was the president and sole salesman of the corporation. The Phillipses decided to move the company plant to Illinois and to borrow funds to build at the new location. Unable to obtain a bank loan, they were referred to private mortgage sources. Their attorney contacted Salk— mortgage investment brokers—who occasionally made loans out of their own funds, and it was understood that this application would be offered to institutional investors by Salk acting as agent for the Phillipses. The Phillipses signed an application for a loan dated March 28, 1963, pre-

pared by Salk on a printed form and rider, by which Salk was appointed as the Phillipses' agent for a period of 60 days for procuring a $100,000 mortgage loan. Paragraph 6 of the rider provided:

"Term Life Insurance in the amount of $50,000 on Don R. Phillips will be instituted with a company selected by Salk, Ward & Salk, Inc. It is understood and agreed that the mortgagee has the option to reduce the outstanding principal balance or disburse the proceeds to a beneficiary."

The above application, although included in the record on appeal, upon objection of defendants was refused admission into evidence by the trial court. Salk submitted the loan application to All American. On April 25, 1963, All American delivered a written approval and commitment for a loan of $100,000 to the Phillipses, specifically providing:

"This commitment is subject to DON R. PHILLIPS furnishing a $50,000 Life Insurance Policy acceptable to the Company as further collateral which is to be assigned to ALL AMERICAN LIFE & CASUALTY COMPANY."

Subsequently, on April 30, 1963, Salk acknowledged and accepted the commitment of April 25, 1963, from All American by returning to All American an executed copy of the commitment. Again, although included in the record on appeal, the April 25, 1963, commitment and the April 30, 1963, acceptance were, on plaintiff's objection, excluded from evidence by the trial court. The record is silent as to how the direct contact came into being, but on April 26, 1963, Don R. Phillips, decedent, appeared at the construction loan department of All American, which referred him to R. Dean Ballard in its insurance department. Mr. Ballard was an employee in the agency department and a licensed agent for writing life insurance. He knew that Mr. Phillips had been referred by the construction loan department in connection with a contemplated loan of $100,000 which All American was making to the Phillipses. Mr. Phillips then signed an application for term life insurance which Mr. Ballard had prepared in his presence. The insurance application which was incorporated by reference into the policy stated that the application was for a $50,000 "Home Security 10 yrs-8 yrs pay" plan policy. The quoted expression is not defined in the application. The insurance application and the term life insurance policy issued thereon remained at all times in the possession of All American. At a later date Mr. Phillips executed a separate form of assignment of the policy to All American as collateral for the loan, but neither he nor his wife, the named beneficiary, ever received the original or a copy of either the insurance application or the policy. Mr. Ballard testified that he had no specific recol-

lection of his conversations with Mr. Phillips concerning the policy. He was paid a commission by All American.

Edward Walle, an employee of Salk, testified at trial that Salk did not refer Phillips to All American; that Salk never selected All American as the company to issue the term insurance required by the mortgage loan application; and that neither Phillips, his wife, nor his attorney ever requested that Salk obtain insurance coverage for Phillips. Walle stated that Salk first became aware that All American had issued an insurance policy to Phillips some time in October 1963, when a letter accompanying an insurance assignment form was received from All American requesting that Salk forward the assignment form to Phillips for execution and collect the first annual premium from him for All American. However, correspondence from Salk to Charles F. Meyers, which was introduced into evidence, indicates that Salk became aware of the issuance of the policy some time prior to September 5, 1963. Walle testified that Salk received no commission for the policy issued to Phillips and that its only remuneration for the entire transaction was a 2 percent commission based on the amount of the mortgage loan, and thereafter a fee for servicing the loan for All American. Walle further testified that Salk extended interim financing to the Phillipses for construction costs until All American tendered the mortgage loan funds, and that Salk did not require the Phillipses to secure this short term financing with anything other than fire insurance.

On April 29, 1963, the Phillipses, through their attorney, signed a new loan application and rider prepared by and submitted to Salk, intended as a revision of the prior application following All American's April 25 commitment. Paragraph 7 provided:

"A 10-year Term Life Insurance Policy in the amount of $50,000.00 on Don R. Phillips will be secured with a company to be selected by Salk, Ward & Salk, Inc. In the event of the death of the insured, the mortgagee shall have the option to reduce the outstanding principal balance or disburse the proceeds to a beneficiary."

On June 20, 1963, Don R. Phillips and Edna S. Phillips, his wife, executed a $100,000 installment note as co-obligors. The trust deed prepared by Salk and executed to secure the note provided in paragraph 12 of a rider thereto:

"It is further covenanted and agreed that there has been assigned to ALL AMERICAN LIFE & CASUALTY COMPANY, an Illinois corporation, all right, title and interest in Policy No. [136189] in the amount of Fifty Thousand Dollars ($50,000.00) on the life of Don R. Phillips."

Thereafter, on September 5, 1963, Salk, by letter to the Phillipses' attorney, stated: "I have been advised by the insurance company which will be a holder of the above mortgage that they have approved a life insurance policy on the life of Don R. Phillips in the amount of $50,000." The letter requested Mr. Phillips to execute an enclosed Collateral Assignment of Life Insurance Policy which was signed by Mr. Phillips on October 7, 1963 and returned to All American. The form did not describe the policy other than by policy number.

Don R. Phillips died on July 8, 1969, at which time there was over $71,000 still outstanding on the installment note. After making a claim for the proceeds of the insurance policy, the plaintiff was advised by All American that the policy issued to her decedent was a reducing term policy which at the date of his death carried a death benefit value of $28,500. The instant suit was then initiated.

At trial, plaintiff presented Alfred H. Rohdl, a local insurance broker of over 34 years of experience, as an expert witness. He testified that the words used in paragraph 7 of the rider to the April 29 loan application, "a 10-year Term Life Insurance Policy in the amount of $50,000," would have a meaning within the insurance industry of a level term policy rather than a reducing term policy. He further testified that in his own business a customer would be specifically informed that a particular term insurance policy was of a reducing nature before such a policy would be issued. On cross-examination, the witness admitted that "term insurance" is a generic name, and that increasing, decreasing and level term policies are classifications within that general designation.

Harold Hayword, a local insurance agent of 35 years' experience, was called by defendant Salk as an expert witness. He testified that the expression "Home Security 10 yrs-8yrs pay" was one of a variety of phrases within the insurance industry having a connotation of a reducing term policy, especially with the addition of the designation "10 yrs-8 yrs pay." He stated that the language used in paragraph 7 of the rider to the April 29 mortgage loan application, "a 10-year Term Life Insurance Policy in the amount of $50,000," would only indicate the period which the policy is to run and not whether it was a level or reducing policy. The witness further testified that it is a custom in the insurance industry to inform a potential customer that a particular term policy is of a reducing nature at the time such policy is applied for and that any literature advertising such a policy would be clearly marked "decreasing."

The trial court entered a decree from which both defendants have appealed, which included the following finding:

"9. The policy of insurance which SALK WARD & SALK, INC., undertook and was obligated to obtain for DON R. PHILLIPS and

EDNA S. PHILLIPS, his wife, and which ALL AMERICAN LIFE & CASUALTY COMPANY should have issued was a 10-year Level Term Life Insurance Policy in the amount of $50,000.-00, with the sum of $50,000.00 being in effect during each of the ten years of the term;"

The decree, *inter alia*, further found in paragraph 10 that the annual premium of the level term policy was $1,481.50 and decreed the reformation of the policy to provide a death benefit payable to plaintiff of $50,000, of which $28,500 had been paid to plaintiff, and that the balance of $21,500 is due and owing, less a credit of $3,201 for the additional premiums due All American on account of the reformation of the policy, and entered judgment against both defendants in the amount of $18,299.

We proceed to a consideration of the contentions raised by each of the defendants.

Defendant Salk first contends that the trial court's finding that Salk had undertaken and was obligated to obtain a level term life insurance policy for plaintiff's decedent is erroneous and, in the alternative, that even if such a duty was undertaken by it, that duty was extinguished by the unilateral action of the decedent in personally applying for the policy directly from All American. We agree with defendant's alternative contention. Even if one assumes that Salk had a duty to procure the insurance required under the Phillipses' mortgage loan application, the record in the instant case fails to establish any action or lack of action on the part of Salk which could be deemed to be a breach of that obligation.

At trial, Charles E. Meyers, the attorney who represented the Phillipses in the negotiations with Salk, testified that in the negotiations preliminary to the formal application for a loan, the use of reducing term life insurance as security for the loan was discussed with Salk and then discarded. He further testified that no instructions were given by Salk relative to the term insurance required under the riders to the loan application except the language of the rider provisions.

■■ Edward Walle, an employee of Salk, testified that his company was never requested by either the decedent, his wife or their attorney to obtain the required term life insurance coverage. He further testified that Salk did not select any insurance company to issue such coverage; that Salk in no way referred the decedent to All American for this purpose; and that Salk did not know that the decedent had directly applied for the policy in question until several months after the fact, and even then had no notice that the policy as issued was not proper in all respects. Hence, on the state of this record, if in fact Salk had a duty to obtain the required insurance policy, that duty arose from the rider to

the March 28 loan application and continued for 27 days, at which time the decedent independently and directly applied for the policy from All American. Therefore, any duty imposed on Salk as agent for the purpose of obtaining the required insurance was terminated when that purpose was thereby accomplished. The April 29 modification of the Phillipses' initial application for loan, executed 3 days after the decedent and All American had arranged for the required insurance, was ineffective to impose a duty on Salk as to a previously extinguished obligation.

■■ When it appears from a consideration of the entire record that the evidence does not support the findings of the trial court, it is the duty of a court of review to reverse. (*Liddell v. Smith* (1965), 65 Ill.App.2d 352, 213 N.E.2d 604.) The record in the case before us fails to support the findings of the trial court that defendant Salk had incurred a duty to procure level term insurance under its agency contract with the Phillipses and that defendant Salk had later breached that duty. Therefore, the judgment for damages against defendant Salk for the alleged breach of its agency contract with plaintiff and her decedent must be reversed.

In its first contention, defendant All American alleges that the trial court erred in excluding from evidence the mortgage loan contract between itself and the Phillipses, entered into by the latter through Salk, their agent. It is argued that All American's commitment of April 25, 1963, constituted a counter offer to make a loan to the Phillipses because the commitment was conditioned upon the furnishing of a $50,000 life insurance policy *acceptable to the company* as further collateral, and that when Salk acknowledged and accepted that commitment on April 30, 1963, then and only then did a contract arise between the parties. Thus, it is further argued that because it is the nature of a reformation action to ascertain the intent of the parties from other than the contract sought to be reformed, those documents were highly relevant as to what was the actual insurance agreement between decedent and All American.

■■ We agree that the nature of the relief sought by plaintiff made those two documents relevant and that the trial court erred in excluding them. This applies similarly to the initial loan application of the Phillipses, dated March 28, 1963, which was excluded on objection by defendants. However, we do not feel compelled to reverse and remand the cause due to such error. The correspondence of April 25 and April 30, 1963, between Salk and All American and the March 28, 1963, loan application of the Phillipses, which were also refused, are included in the record on appeal. In chancery cases, the whole record is before a court of review and if there is competent evidence to support a decree it must be affirmed; if not, it must be reversed, and this is without regard to the views of the chancellor as to the competency of the evidence

at the hearing. *Dombrow v. Dombrow* (1948), 401 Ill. 324, 82 N.E.2d 47; *Newman v. Youngblood* (1946), 394 Ill. 617, 69 N.E.2d 309.

■■ In the recent case of *Goldblatt Bros., Inc. v. Addison Green Meadows, Inc.* (1972), 8 Ill.App.3d 490, 290 N.E.2d 715, this court in a supplemental opinion questioned the practice of including within a factual determination on review evidence excluded at trial but contained in the record upon appeal. There, in a suit in part for specific performance, the appellate court in its original opinion had considered, in addition to other evidence, the evidence erroneously excluded by the trial court consisting of the oral testimony of an expert witness and an offer of proof as to his opinion of the possible damages to the plaintiff as a result of the defendant's breach of contract. Upon rehearing, the appellate court held that to have a court of review consider the erroneously excluded testimony in a factual determination as to the sufficiency of evidence without remand and without allowing the defendant an opportunity to meaningfully cross-examine the expert witness or rebut his testimony raised substantial questions of fairness and due process of law. We feel that the facts in *Goldblatt* distinguish it from the instant case. Here, the evidence erroneously excluded by the trial court consisted of documents, and as such the exhibits speak for themselves. For this reason, consideration of these rejected exhibits in our determination of the sufficiency of the evidence to support the instant decree of reformation does not present questions of fairness or due process of law. A reversal and remand of this cause for the sole purpose of admitting these documents would be a needless formality. Accordingly, our review will consider these exhibits the same as if the trial court had admitted them into evidence at the hearing below. See *Gundich v. Emerson-Comstock Co.* (1960), 24 Ill.App.2d 138, 164 N.E.2d 512; *Gustin v. Bryden* (1917) 205 Ill.App. 204.

All American next contends that the trial court erred in finding that the insurance contract between it and plaintiff's decedent was the product of a mutual mistake of fact, a requisite for an action in reformation. This argument is predicated upon the assertion that the plaintiff failed to introduce any evidence that either her decedent or All American was operating under a mutual mistake of fact when All American issued a reducing term life insurance policy to the decedent.

■■ In order to reform a contract of insurance the party seeking the reformation must show by clear and convincing evidence that at the time the contract was executed there existed a mutual mistake of fact, not law, common to both parties to the contract, and that because of this mutual mistake of fact the policy as issued does not reflect the real agreement between the parties. (*State Farm Mutual Automobile Insurance Co, v,*

*Hanson* (1972), 7 Ill.App.3d 678, 288 N.E.2d 523; *Sedlacek v. Sedlacek* (1969), 107 Ill.App.2d 334, 246 N.E.2d 6; *New York Life Insurance Co. v. Rak* (1961), 30 Ill.App.2d 86, 173 N.E.2d 603, *aff'd* (1962), 24 Ill.2d 128, 180 N.E.2d 470; *Hyman-Michaels Co. v. Massachusetts Bonding & Insurance Co.* (1956), 9 Ill.App.2d 13, 132 N.E.2d 347.) As the plaintiff in a reformation action is seeking not to rescind or avoid the contract, but instead, to enforce a contract different from that which he signed, he must be able to point to the contract he intended to make and prove a like intention on the part of the defendant. In each of those cases where reformation of an insurance contract has been allowed there has been a clear showing of what the plaintiff intended to procure from the defendant insurer and of the latter's knowledge of that intention, as a result of either express directions from the insured or by knowledge on the part of the insurer of circumstances wholly inconsistent with the provisions of the policy as issued. *Hyman-Michaels Co. v. Massachusetts Bonding & Insurance Co., supra.*

■■ In considering All American's contention that the evidence is insufficient to support the decree of reformation entered herein, we are limited in our review of the record by the general rule that a decree will not be disturbed where it rests upon disputed questions of fact, unless the findings upon which the decree is based are contrary to the manifest weight of the evidence. *State Farm Mutual Automobile Insurance Co. v. Hanson, supra; Swan v. Allstate Insurance Co.* (1967), 89 Ill.App.2d 205, 232 N.E.2d 491; *Stoltz v. National Indemnity Co.* (1952), 345 Ill.App. 495, 104 N.E.2d 320.

In the instant case, all of the documentary exhibits introduced at trial, as well as those rejected but contained in the record on appeal, reflect that one of the conditions to the issuance of a mortgage loan to the Phillipses was the furnishing of a $50,000 term life insurance policy on the life of the decedent, Don R. Phillips. Their original March 28, 1963, application to Salk for a mortgage loan speaks of this condition as a "Term Life Insurance Policy in the amount of $50,000." Their second application to Salk of April 29, 1963, executed by their attorney, also speaks of the insurance requirement as a "10-year Term Life Insurance Policy in the amount of $50,000." The trust deed prepared by Salk and executed by the Phillipses refers to he insurance policy in question as "Policy No. (136189) in the amount of FIFTY THOUSAND DOLLARS ($50,000.00)." As opposed to a level term life insurance policy, a reducing term policy in an amount of $50,000 *is* only a $50,000 policy in the first year it is issued; thereafter, the death benefits will be less. In both an ordinary and a logical meaning, a term life insurance policy in the amount of $50,000, whether for a specified or an unspecified period, does

not have a $50,000 value unless it is a level term policy. The conclusion that the plaintiff's decedent gave this same common interpretation to the language contained in these documents readily arises. This conclusion is buttressed by the testimony of Charles F. Meyers that the possibility of using decreasing term life insurance as security for the mortgage loan was discussed in the preliminary negotiations with Salk, and then subsequently rejected.

On the basis of the above evidence and the inferences therefrom, the trial court's conclusion that it was the decedent's intent to procure a $50,000 level term life insurance policy from All American is not unreasonable. Similarly, such language was included in the Phillipses' March 28, 1963, mortgage loan application which was used by Salk to solicit All American. The response to this solicitation by All American embodied in its April 25, 1963, commitment letter speaks of the acceptance of the mortgage loan as "subject to DON R. PHILLIPS furnishing a $50,000 Life Insurance Policy." This evidence suports a conclusion that All American had knowledge of the decedent's intention to procure a level insurance policy, both from the decedent's directions contained in the loan application and All American's knowledge of the language contained in its own commitment letter which is inconsistent with the provisions of the policy it later issued.

■■ All American argues that the application for the term insurance policy issued shows upon its face that the decedent received that for which he knowingly bargained, because the application he signed states that the policy applied for is a "Home Security 10 yrs-8 yrs pay" plan policy. It is true that expert testimony was presented that this designation was understood within the insurance industry as a reducing type of term policy, and that the custom within the industry was to inform a customer of the nature of a policy before issuing a reducing term policy. However, R. Dean Ballard testified that he could not recall any of his conversation with the decedent at the time of the execution of the insurance application. There is no evidence of record that the decedent understood the connotation of the designation used in the application. Furthermore, the policy was never given to the decedent, nor was he ever furnished with a copy of it or the application. The plan designation written on an insurance application by the insurer's agent and which was seen by the insured on one brief occasion is not sufficient of itself to charge the insured with knowledge of the nature of that policy because of the connotation that designation carries within the insurance industry and so defeat a subsequent action for reformation. *State Farm Mutual Automobile Insurance, Co. v. Hanson, supra.*

All American further argues that it is ludicrous to assume that an ex-

perienced business man such as plaintiff's decedent would, in borrowing money, procure or attempt to procure a life insurance policy with annual premiums substantially greater than those of a policy required by and acceptable to the lending institution. This argument overlooks another equally logical explanation—that the decedent desired the greatest death benefit possible in order to protect the financial resources of his wife who was the maker of the installment note herein, from depletion upon his death.

■■ After a thorough examination of the record we cannot say that the trial court's decree ordering the reformation of the term life insurance policy from a reducing term to a level term is contrary to the manifest weight of the evidence. It is not necessary that we pass upon the final contention of All American that the additional finding that it had breached its contract to issue a level term insurance policy in the amount of $50,000 to plaintiff's decedent is erroneous. By our affirmance of the decree of reformation that issue becomes moot. The reformed term policy requires that All American fulfill its contractual obligation of providing full death benefits according to those reformed terms, minus only the excess premium amounts of a level term policy over that of a reducing term policy and any proceeds already paid to plaintiff as beneficiary.

For the foregoing reasons, the decree as to defendant Salk is reversed, and as to All American is affirmed.

Reversed in part and affirmed in part.

DEMPSEY and McGLOON, JJ., concur.