ANNE SHELDON, Ex'r of the Last Will of Gilbert R. Sheldon, Deceased, Plaintiff-Appellee and Cross-Appellant, *v.* COLONIAL CARBON COMPANY, Defendant-Appellant and Cross-Appellee.

First District (5th Division)   No. 82—994

Opinion filed February 10, 1983.—Rehearing denied September 1, 1983.

Edwin H. Conger, of Tenney & Bentley, of Chicago, for appellant Colonial Carbon Company.

David Lincoln Ader, of Ader & Ader, of Chicago, for appellee Anne Sheldon.

JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal from a final order granting reformation of an employment contract to state that plaintiff was entitled to payment of $40,000 upon the death of Gilbert R. Sheldon (Sheldon) as well as upon his retirement. Defendant contends that the order is against the manifest weight of the evidence. Plaintiff cross-appeals from the denial of prejudgment interest.

On December 16, 1970, Sheldon entered into an employment contract with defendant which provided in relevant part:

"3. The term of such employment shall be for a term commencing January 1, 1970 and ending on Sheldon's Normal Retirement Date under the Colonial Pension Trust Agreement of July 1, 1966, as amended, provided, however, that Sheldon may at any time retire from the employment of Colonial upon 90 days' notice in writing to Colonial.

\* \* \*

5. When Sheldon's employment by Colonial terminates, either at the normal retirement date as specified by the Pension Plan or if he voluntarily elects early retirement, Colonial agrees to pay to Sheldon as deferred compensation hereunder the sum of $8,000 per year for five years, payable in equal semi-monthly installments so long as he shall be living, and in the event of his death the balance, if any, shall be paid to his estate in one lump sum. During such five year period, Sheldon shall render to Colonial such advisory and consulting services as its Board of Directors may reasonably request, but such services shall be performed in such places in the United States as he may designate and shall not exceed twenty-four hours in any month. Colonial will pay all travel and other expenses, if any, relating to these consulting services."

Sheldon suffered a severe heart attack on December 26, 1970, and died on January 13, 1971, before reaching the specified retirement age and without giving notice of an election to take early retirement.

Plaintiff filed this action, alleging that $40,000 was owed Sheldon's estate as deferred compensation. A hearing was held at which Earl Zitzler, through an evidence deposition, stated that he was

defendant's president until 1971, then served as its vice-president until his retirement in 1976; that he, Sheldon, and Howard Collins, minority shareholders, brought suit on behalf of defendant against its controlling shareholder in 1970, alleging that certain of his management practices were harmful to the corporation and resulted in financial injury to them; that the parties to that action reached a settlement agreement in New York on December 16, 1970; that as a part of that settlement each of the minority shareholders, including Sheldon, was to receive compensation for five years after retirement; and that the settlement agreement was not considered as payment for anything in the past but was to form the basis of a new understanding on how the company was to be managed in the future. Zitzler also stated that "[a]t no time during these negotiations was it indicated by anyone participating in the negotiations that the employment agreements then agreed upon *** would provide for the payment of deferred compensation in the event of the employee's death prior to retirement."

Zeamore Ader, called as an adverse witness by defendant, testified that he was attorney for the minority shareholders in the action against defendant's controlling shareholder; that during that time various settlement proposals were made, none of which discussed the disposition of deferred compensation should death occur before retirement; that the final negotiations, which he did not attend, were held in New York; and that he probably had an opportunity to examine the agreements before the releases were exchanged.

Ader testified in rebuttal that Zitzler indicated it was his expectation that, should he die before completion of the notice requirement, his wife or estate would be entitled to the money.

The trial court found that the deferred compensation agreement, the settlement agreement, and the release of Sheldon's claims were all part of one transaction; that the agreement was prepared by defendant's attorneys and signed by Sheldon without benefit of counsel; that no mention was made during negotiations or signing as to what would happen to the deferred compensation in the event of death before retirement; that Sheldon died before reaching retirement age and before giving notice of voluntary retirement; and that the parties intended that Sheldon should unconditionally receive $40,000 deferred payment. The deferred compensation agreement was reformed to read that "Sheldon's estate is entitled to $40,000 in the event of death before notice of retirement," and this appeal followed.

OPINION

Defendant contends that the order of reformation is against the

manifest weight of the evidence. It argues that the court made no finding of mutual mistake or mistake on plaintiff's part coupled with fraud on its part, and that the evidence would not support such a finding. Furthermore, defendant maintains, the order is contrary to the trial court's express finding that during negotiations of the contract, disposition of the deferred compensation in the event of death before retirement was never mentioned.

There is a presumption that a written instrument conforms to the intention of the parties thereto. (*La Salle National Bank v. American Insurance Co.* (1973), 14 Ill. App. 3d 1027, 303 N.E.2d 770.) Therefore, in an action for reformation, plaintiff has the burden of proving by very strong, clear and convincing evidence (*Parrish v. City of Carbondale* (1978), 61 Ill. App. 3d 500, 378 N.E.2d 243) that there has been a meeting of the minds (*Harden v. Desideri* (1974), 20 Ill. App. 3d 590, 315 N.E.2d 235) resulting in an actual agreement between the parties (*Phillips v. Salk, Ward & Salk, Inc.* (1974), 20 Ill. App. 3d 359, 314 N.E.2d 262); but, at the time the agreement was reduced to writing and executed (*319 South La Salle Corp. v. Lopin* (1974), 19 Ill. App. 3d 285, 311 N.E.2d 288), some agreed-upon provision was omitted or one not agreed upon was inserted (*Friedman v. Development Management Group, Inc.* (1980), 82 Ill. App. 3d 949, 403 N.E.2d 610) either through mutual mistake or through mistake by one party and fraud by the other (*Texas Eastern Transmission Corp. v. McCrate* (1979), 76 Ill. App. 3d 828, 395 N.E.2d 624). The question whether plaintiff has presented sufficient evidence to meet this higher burden of proof and overcome the presumption that the instrument as written expresses the parties' true intention is primarily a question of fact (*Texas Eastern Transmission Corp. v. McCrate*), and we will not disturb the trial court's decision unless it is against the manifest weight of the evidence (*Parrish v. City of Carbondale*).

Initially, we note that the trial court made no express finding that a mutual mistake occurred. However, that omission is immaterial, since, in the absence thereof, all reasonable presumptions will be extended in favor of the order under review. (*Stony Island Church of Christ v. Stephens* (1977), 54 Ill. App. 3d 662, 369 N.E.2d 1313.) Here, it is reasonable to presume that the court implicitly found that an agreed provision was omitted, either through a mutual mistake or mistake coupled with fraud, since one of them is a necessary element in an action for reformation. Compare *Weigel v. O'Connor* (1978), 57 Ill. App. 3d 1017, 373 N.E.2d 421 (a finding of the existence of a necessary element of the cause of action was implicit in the court's judgment order).

■ Defendant further contends, however, that this implicit finding has no support in the evidence, particularly in the light of the trial court's express finding that the possibility of death before retirement was not even mentioned in the parties' negotiations. The uncontroverted testimony at trial was that the parties intended to provide for compensation after retirement, and none of the proposals made during the lengthy negotiation of their agreement raised the possibility of death before retirement; and that the parties simply had not even though about this eventuality. While Zitzler indicated that he expected the compensation to be paid whether or not he gave the required notice, he did not explain the basis for this expectation. Furthermore, his expectations, while indicative of what one party to the agreement thought, cannot be ascribed to the corporation. It is not only the intention of Sheldon or those similarly situated in negotiating the contract which must be proved in order to support reformation thereof, but a common intention held by Sheldon and defendant alike. *Phillips v. Salk, Ward & Salk, Inc.* (1974), 20 Ill. App. 3d 359, 314 N.E.2d 262.

Plaintiff urges that defendant's intention can be ascertained from the circumstances surrounding the agreements and the terms of the writing itself. Initially, she argues that the agreement was entered into to adjust past differences, and the $40,000 in deferred compensation was part of the consideration given to "right old wrongs," a contention directly contradicted by Zitzler. However, even assuming plaintiff's interpretation is correct, it does not justify the further assumption that, because this was part of an agreement in settlement of litigation, the deferred compensation portion was therefore an absolute obligation, particularly when the deferred compensation was not the sole consideration for Sheldon's release of his claims against the corporation. Sheldon also received an assurance of continued employment until he retired and an agreement which unconditionally obligated defendant to purchase his stock at 110% of its book value; defendant agreed to pay all of Sheldon's costs of bringing suit, including attorney fees; and the controlling shareholder agreed to cease the practices complained of in the minority shareholders' suit. Thus, it cannot be said that refusal to recognize the payment of deferred compensation as an absolute obligation deprives Sheldon of the benefit of his bargain.

Plaintiff's argument that the terms of the writing evidence an intention that the $40,000 was unconditionally due and payable on Sheldon's death is similarly unpersuasive. The fact that the contract establishes no minimum period of employment before retirement,

which plaintiff relies on in arguing that the parties intended an unconditional obligation, is equivocal at best. The deferred compensation provision could as easily have been inserted with the intention of encouraging the early retirement of an employee who had engaged in extensive litigation against the corporation. Since there are plausible alternative explanations for establishing no minimum period of employment, the mere existence of this provision does not in itself represent the clear and convincing evidence necessary to support an action for reformation.

Plaintiff further contends that the evidence presented would support a finding of mistake on Sheldon's part coupled with fraud by defendant. In support thereof, she argues that defendant isolated Sheldon from his attorney, causing him to enter into negotiations without the benefit of representation; while defendant's attorney not only negotiated on its behalf, but drafted the final agreement. Defendant asserts that, contrary to plaintiff's argument, there was no inequitable conduct on its part, maintaining that Sheldon, himself an attorney, was represented by counsel throughout the lengthy preliminary negotiations and voluntarily appeared without counsel for the final negotiations.

■ Even if we accept defendant's interpretation of the facts, they are insufficient to prove fraud, which is generally defined as "anything intended to deceive, including all acts, omissions and concealments involving a breach of legal or equitable duty, trust or confidence resulting in damage to another." (*Gary-Wheaton Bank v. Burt* (1982), 104 Ill. App. 3d 767, 773, 433 N.E.2d 315, 322.) In actions for reformation based on the existence of a unilateral mistake coupled with fraud, we have looked to whether the parties have reached a mutual agreement; but the defendant, knowing that the instrument finally prepared does not accurately reflect that agreement, has concealed the defect from plaintiff at the time of execution. (*Harmony Way Bridge Co. v. Leathers* (1933), 353 Ill. 378, 187 N.E. 432; *319 South La Salle Corp. v. Lopin* (1974), 19 Ill. App. 3d 285, 311 N.E.2d 288.) Here, as we have previously noted, there is no evidence that the parties reached a mutual agreement that the deferred compensation would be paid in the event of Sheldon's death before retirement, nor is there evidence that defendant concealed anything from Sheldon when the agreement was executed. Therefore, a finding that a unilateral mistake coupled with fraud occurred is against the manifest weight of the evidence.

Finally, plaintiff contends that, even if we find that the order granting reformation is contrary to the manifest weight of the evi-

dence, we may still affirm. She posits that the settlement agreement created an unconditional obligation to pay, and the collateral condition that Sheldon give notice of his election to take early retirement was discharged by impossibility of performance. Plaintiff admits that this argument was not before the trial court.

We may affirm the order of the trial court on the basis of any legal grounds which have factual support in the record (*Monarski v. Greb* (1950), 407 Ill. 281, 95 N.E.2d 433), even where such grounds were not raised before the trial court (*Ogden Group, Inc. v. Spivak* (1981), 92 Ill. App. 3d 932, 416 N.E.2d 393), but we may not entertain theories of recovery not pursued in the trial court "if proof might have been offered at trial to refute or overcome such a theory had it been presented" (*Protestant Hospital Builders Club v. Goedde* (1981), 98 Ill. App. 3d 1028, 1032, 424 N.E.2d 1302, 1306).

In the instant case, plaintiff's alternate contention requires a finding that the agreement created an unconditional liability on defendant's part. However, we have determined that the facts do not support this contention, for plaintiff failed to establish that the parties intended to create an absolute obligation. Furthermore, defendant has not had the opportunity to present evidence that, contrary to plaintiff's assertion, the requirement that Sheldon retire was an essential condition and that his failure to so elect was not a mere "*de minimus* deviation from contract terms." Therefore, we may not affirm on the alternative grounds advanced by plaintiff.

In the light of our disposition of defendant's appeal, we need not reach plaintiff's cross-appeal from the denial of prejudgment interest.

For the foregoing reasons, the order of the trial court granting reformation is reversed.

Reversed.

LORENZ and MEJDA, JJ., concur.