GREAT AMERICAN FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellee, v. GEORGE GRIVAS, Defendant-Appellant.

First District (5th Division)   No. 85—0932

Opinion filed September 27, 1985.—Rehearing denied November 6, 1985.

Robert H. Aronson, of Chicago, for appellant.

Walsh, Case, Coale & Brown, of Chicago (Leon E. Lindenbaum, of counsel), for appellee.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff brought an eviction action (Ill. Rev. Stat. 1983, ch. 110, par. 9—101 *et seq.*) to recover possession of restaurant premises occupied by defendant. Defendant filed a three-count counterclaim seeking reformation of the written lease, specific performance, and money damages resulting from fraud and deceit. Following a bench trial on the sole issue of defendant's counterclaim for reformation, the trial court denied reformation of the lease and subsequently granted plaintiff's motion for summary judgment for possession of the premises. Pursuant to Rule 304(a) (87 Ill. 2d R. 304(a)) the court entered findings that there was no just reason for delaying enforcement or appeal of the final judgments as to reformation and possession.* Defendant appeals, raising two issues: (1) whether the trial court's finding that there was no mutual mistake of fact which would justify reformation in the use of an "office" form lease rather than a "store" form lease was reversible error; and (2) whetl r it was error to grant summary judgment when an issue of fact existed as to which party was entitled to possession of the premises.

Pertinent to our disposition are the following facts.

On July 12, 1983, plaintiff filed its verified complaint in forcible detainer against defendant to recover possession of the premises. Thereafter defendant filed his unverified answer denying that plaintiff was entitled to possession and affirmatively asserting that the lease did not end until June 30, 1992, pursuant to an attached exhibit. This exhibit consisted of a document entitled "Office Lease," showing a term of July 1, 1982, to June 30, 1992. This lease gave the lessor an option to terminate upon 30 days' notice.

Defendant subsequently filed a verified first-amended answer and counterclaim reasserting his superior right of possession by reason of the lease. In count I of his counterclaim he sought reformation of the lease, alleging, in part, that under a prior lease he had expended over $100,000 renovating the premises in reliance on plaintiff's assurances that the lease would ultimately be extended through June 30, 1987, and that defendant's renovation might result in an even longer extension. Defendant also alleged that on May 5, 1982, he received the new lease executed by plaintiff for a term beginning July 1, 1982, and ending June 30, 1992. Defendant contended that although both parties intended the new lease to be for a

---

*Judge Francis W. Glowacki presided over the trial and entered the order on defendant's counterclaim for reformation, while Judge Frank Orlando entered summary judgment in favor of plaintiff on the issue of possession.

10-year term, neither intended to use an office lease form which was inappropriate for a restaurant. They intended to use a store lease form similar to the prior lease between the parties. Defendant requested that the court reform the new lease with regard to provisions which did not apply to restaurants and which were never agreed upon, in particular the option-to-terminate provision. Count II of the counterclaim prayed for specific performance of the new lease as reformed by the court. Count III of the counterclaim sought recovery of $117,000, which defendant allegedly expended to remodel the premises in reliance upon plaintiff's alleged fraudulent or negligent oral misrepresentations. The prior lease attached as exhibit B was entitled "Store Lease" and contained no option-to-terminate provision.

Plaintiff's verified answer to defendant's counterclaim denied all material allegations of those counterclaims except that it admitted that defendant had informed plaintiff that he wished to borrow $50,000 to $100,000 to renovate the premises and sought a 10-year lease.

Plaintiff subsequently filed a five-count amended and supplemental complaint. Count I alleged that plaintiff offered to lease the premises to defendant pursuant to a written lease proposal (attached as exhibit A) which it tendered to defendant. The tendered proposal contained an indefinite and uncertain term of duration in that the term was mistakenly shown as beginning on July 1, 1982, and ending on June 30, 1982. Although the parties did not agree to the duration of the lease they entered into a tenancy relationship as of July 1, 1982. On July 29, 1983, plaintiff served defendant with a 30-day notice of termination, but defendant unlawfully withheld possession. The attached exhibit A was entitled "Office Lease," showed a term beginning July 1, 1982, and ending June 30, 1982, and contained the option-to-terminate provision.

Count II of plaintiff's amended supplemental complaint similarly alleged that the parties did not agree to the duration of the lease, but that on March 23, 1983, and June 16, 1983, plaintiff served defendant with notices of termination of the tenancy as of June 30, 1983, and attached copies of the notices. Plaintiff's alternative count III alleged that plaintiff leased the premises to defendant for a term beginning July 1, 1982, and ending June 30, 1983; that defendant failed to surrender possession on June 30, 1983; and that defendant continued to unlawfully withhold the premises.

Plaintiff's alternative count IV alleged that plaintiff executed and mailed a lease to defendant intending and believing the term

provided for an ending date of June 30, 1983, and did not realize that due to a scrivener's error the lease mistakenly showed an ending date of June 30, 1992. Defendant knew the ending date of June 30, 1992, was a mistake, and knew that plaintiff intended to offer only a one-year lease ending June 30, 1983, but nevertheless executed the document without disclosing the 1992 ending date to plaintiff until after his receipt of the March 23, 1983, notice of nonrenewal. Defendant refused to vacate and continued to withhold possession despite plaintiff's repeated demands. Plaintiff's alternative count V alleged that it leased the premises to defendant pursuant to either the lease proposal ending June 30, 1982, or pursuant to the purported lease ending June 30, 1992, but that the ending date of the latter had been altered from 1982 to 1992 without plaintiff's knowledge or consent after plaintiff executed the lease. In either event the parties agreed in paragraph 11 to the option-to-terminate provision. Count V further alleged that on July 29, 1983, plaintiff exercised its option to regain possession of the premises by serving such notice upon defendant, and that defendant refused to surrender possession of the premises and pursuant to other provisions of the lease owed plaintiff liquidated damages.

Defendant's verified answer to the amended supplemental complaint denied that the lease contained an uncertain and indefinite ending date in that the term ended on June 30, 1992, but admitted that plaintiff served him with a 30-day notice of termination of the tenancy on July 29, 1983. Defendant averred that plaintiff honored the past representation that it would extend the lease for five years, that he received a fully executed 10-year lease, but that plaintiff either innocently or fraudulently prepared the lease on an "Office Lease" form rather than a "Store Lease" form. Defendant denied that the ending date of June 30, 1992, was a mistake or that he knew it was a mistake.

At the trial on count I of defendant's counterclaim for reformation, defendant testified that he moved to this country from Greece and never learned to read English although he then identified his signature on various pleadings containing affidavits attesting that he had read and understood the contents of the pleading and his signature on an application for a liquor license. He further testified that he had filled out the liquor license application dated April 16, 1982, in which he stated under oath that his lease ran until September 14, 1984, even though the existing lease showed it would expire on June 30, 1982. Defendant explained that he had to put something on the application or he would not get a liquor license.

In further testimony defendant stated that in 1976, he told Mr. Hollis, plaintiff's vice-president, that he wanted to remodel the premises and needed a longer lease. In June 1977, Hollis brought him a new lease which extended the term of the original lease until June 30, 1982, that defendant then told Hollis that he needed a longer term because he would have to spend over $100,000 for remodeling, that Hollis told him that plaintiff would give him a five-year lease when the extension expired, and defendant then spent over $100,000 remodeling the premises. In February 1982 he learned that Hollis was no longer with the bank. His replacement, Raymond Kaufman, told him he could have a one-year extension of the lease. When defendant informed him of Hollis' promise, Kaufman stated that he would look into the duration of the lease. In May 1982, defendant received a letter from plaintiff which was opened by Christine Spanos. The parties stipulated that if she were called to testify she would state that she opened the letter and found inside a 10-year lease.

Defendant testified that he only read the portion of the lease regarding its duration and rent and then signed the original and two copies, executed by Kaufman, and returned the copies to plaintiff. He did not show the lease to a lawyer before signing it because he thought the terms were the same as in the previous lease. Kaufman never told him he was changing the lease form. Defendant acknowledged in his testimony that he received a letter from plaintiff dated March 23, 1983, stating that plaintiff would not renew defendant's lease upon its expiration on June 30, 1983.

Donna Vitacco, Kaufman's secretary, testified that in April 1982, she and Kaufman looked into their files to see what form had been used for other leases. She then purchased the office lease form. Kaufman told her that the duration of the lease would be one year, made a photocopy of the form, and gave her the copy upon which he had handwritten the information she was to type upon the form. She prepared the lease from Kaufman's handwritten copy. According to Vitacco, Kaufman checked the lease and told her to give it to plaintiff's general counsel. After the lease was examined by plaintiff's general counsel, the vice-president of the bank, it was sent back to Kaufman whereupon he made three copies of it and sent the original and two copies to defendant.

Raymond Kaufman testified that he told defendant that he could have only a one-year lease. When defendant stated that he needed a three-year lease to obtain a liquor license, he told defendant that he would have to check with his organization before making that com-

mitment. He did not speak with defendant again. Kaufman further testified that he obtained the lease form from a file drawer and checked it after his secretary had typed it. After the vice-president or the general counsel approved the lease, he signed it and told his secretary to make three copies and send the original and two copies to defendant. He was not aware of the difference between a store lease and an office lease, but was aware of the option-to-terminate provision of the lease and signed it knowing that it contained an option to terminate. He did not tell defendant he was changing the form of the lease, nor did he see the lease after it was fully executed until defendant's attorney sent him a copy in April 1983.

Kaufman identified the office lease form showing a term running from "July 1, 1982, to June 30, 1982," as being in the same form as when it was approved by plaintiff's general counsel. He also identified a letter dated April 5, 1983, he received from defendant's attorney regarding plaintiff's March 23, 1983, letter to defendant which informed defendant that plaintiff would not renew the lease when it expired on June 30, 1983. The letter from defendant's attorney purportedly enclosed a photocopy of the lease showing the termination date of June 30, 1992. The witness further identified another letter from defendant's attorney dated April 13, 1983, stating that defendant would not vacate the premises on June 30, 1983. The witness also identified the notice of eviction which he personally served upon defendant on July 29, 1983.

The trial court then entered judgment against defendant on his counterclaim for reformation of the lease. The court's order stated that there was no mutual mistake of intent as to the contents of the written instrument, and in the absence of any fraud or misrepresentation, defendant's unilateral assumption that the terms were other than what was obvious from even the most cursory of readings was insufficient to meet the burden of proof to justify reformation. The trial court subsequently denied defendant's motion for reconsideration.

Plaintiff then moved for summary judgment for possession of the premises on the ground that there was no genuine issue of material fact relating to its claim of possession because judgment had been entered against defendant denying his claim for reformation, and defendant had admitted being served with notice. Defendant's answer to the motion admitted that he was served with notice on July 29, 1983, but alleged that plaintiff filed suit prior to serving notice on defendant rendering the cause fatally defective. Defendant further contended that issues regarding plaintiff's fraudulent con-

duct precluded the entry of summary judgment. Plaintiff's reply contended that defendant's claim for his remodeling expenses asserted in count III of his counterclaim was not germane to the issue of possession and hence could not be introduced in a forcible detainer proceeding.

The trial court subsequently granted plaintiff's motion for summary judgment finding that defendant was unlawfully withholding from plaintiff possession of the premises since August 29, 1983.

Defendant first contends that the trial court's finding that there was no mutual mistake of fact which would justify reformation in the use of an "office" form lease rather than a "store" form lease was reversible error. We cannot agree.

■■ Reformation of a contact should be allowed only when clear and convincing evidence compels the conclusion that the instrument as it stands does not properly reflect the true intention of the parties and that there has been either a mutual mistake or a mistake by one party and fraud by the other. (*319 South La Salle Corp. v. Lopin* (1974), 19 Ill. App. 3d 285, 311 N.E.2d 288.) There is a presumption that a written instrument conforms to the intention of the parties thereto. (*Sheldon v. Colonial Carbon Co.* (1983), 116 Ill. App. 3d 797, 452 N.E.2d 542.) Hence, the burden of proving a reformation suit, which is on the party seeking reformation, is higher than that in an ordinary civil lawsuit. (*Beynon Building Corp. v. National Guardian Life Insurance Co.* (1983), 118 Ill. App. 3d 754, 455 N.E.2d 246.) A written agreement will not be reformed unless the party seeking reformation proves by clear and convincing evidence that there has been a meeting of the minds resulting in an actual agreement between the parties, but at the time the agreement was reduced to writing and executed some agreed-upon provision was omitted or one not agreed upon was inserted either through a mutual mistake or through a mistake by one party and fraud by another. (*Sheldon v. Colonial Carbon Co.* (1983), 116 Ill. App. 3d 797, 452 N.E.2d 542.) The question whether plaintiff has presented sufficient evidence to meet his higher burden of proof and overcome the presumption that the instrument as written expresses the parties' true intention is primarily a question of fact, and we will not disturb the trial court's decision unless it is against the manifest weight of the evidence. *Sheldon v. Colonial Carbon Co.* (1983), 116 Ill. App. 3d 797, 452 N.E.2d 542.

■ The trial court here made an express finding that there was no mutual mistake of intent as to the contents of the written instrument and implicitly found that there was no fraud or misrepresenta-

tion. The record supports the trial court's findings. Defendant, on his countercomplaint, has failed to prove by clear and convincing evidence that the option-to-terminate provision was mistakenly inserted in the contract. Plaintiff's agent Kaufman testified that he signed the lease knowing that it contained the option-to-terminate provision. Moreover, defendant cannot contend that plaintiff's insertion of the option-to-terminate provision was fraudulent where it clearly appeared on the face of the document. Although defendant argues that he did not read the terms of the lease, this would not compel a contrary conclusion, because one is under a duty to learn or know the contents of a written contract before he signs it. (*Leon v. Max E. Miller & Son, Inc.* (1974), 23 Ill. App. 3d 694, 320 N.E.2d 256.) Hence, the record supports the trial court's findings that there was no mutual mistake of fact, there was no fraud or misrepresentation and defendant failed to meet his burden of proof to justify reformation.

■ ■ We also cannot accept defendant's contention that the trial court erred in granting plaintiff's motion for summary judgment because a triable issue of fact existed as to which party was entitled to possession of the premises. Summary judgment is appropriate where the pleadings, depositions, admissions, affidavits, and exhibits submitted to the trial court reveal that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c).) The purpose of a forcible detainer action is to adjudicate the parties' rights to possession of the premises, and, therefore, such proceedings should not be burdened by matters not directly related to the issue of which party is entitled to possession. (*Bismarck Hotel Co. v. Sutherland* (1980), 92 Ill. App. 3d 167, 415 N.E.2d 517.) The portion of the Code of Civil Procedure dealing with forcible entry and detainer (Ill. Rev. Stat. 1983, ch. 110, par. 9—106) provides that matters not germane to the distinctive purpose of the proceeding shall not be introduced by joinder, counterclaim or otherwise. The Illinois Supreme Court has accepted the definition of "germane" to mean "closely allied," "closely related; closely connected; *** appropriate." *Rosewood Corp. v. Fisher* (1970), 46 Ill. 2d 249, 256, 263 N.E.2d 833.

■ In the present case, the remaining count of defendant's counterclaim sought damages for plaintiff's alleged fraud and deceit. Hence, the remaining issues do not concern the issue of possession. (See *Bismarck Hotel Co. v. Sutherland* (1980), 92 Ill. App. 3d 167, 415 N.E.2d 517.) Furthermore, the lease in question was a commer-

cial lease, and matters which are considered germane to the issue of possession are construed more strictly in actions involving commercial leases. *General Parking Corp. v. Kimmel* (1979), 79 Ill. App. 3d 883, 398 N.E.2d 1104.

Defendant also contends for the first time in his reply brief that plaintiff's suit in forcible detainer is fatally defective because notice to quit was served upon defendant on July 29, 1983, 24 days after the filing of the forcible detainer action. This question was waived where defendant failed to raise the issue in his initial brief. 87 Ill. 2d R. 341(g); *Comet Casualty Co. v. Schneider* (1981), 98 Ill. App. 3d 786, 424 N.E.2d 911.

We also note that section 9—102(4) (Ill. Rev. Stat. 1983, ch. 110, par. 9—102(4)) provides that an action in forcible detainer may be maintained by a person entitled to the possession of lands "[w]hen any lessee *** holds possession without right after the termination of the lease *** by notice to quit ***." We find that the record here affirmatively shows that the lease terminated by plaintiff's exercise of the option-to-terminate provision. The record shows that plaintiff notified defendant in March 1983 that it would not be renewing the lease upon its expiration on June 30, 1983. Correspondence from defendant's attorney to plaintiff in April 1983 further shows defendant's understanding that plaintiff wished the tenancy to cease after June 30, 1983. The record further shows that plaintiff refused a purported tender of rent for July 1983. A notice to quit is sufficient as long as it adequately informs the tenant of the landlord's intent to end the tenancy. (*Bismarck Hotel Co. v. Sutherland* (1980), 92 Ill. App. 3d 167, 415 N.E.2d 517.) We believe plaintiff clearly apprised defendant that it was terminating the tenancy prior to filing this action. Hence, we believe that there was no genuine issue of material fact as to the party's right to possession of the premises.

Accordingly, we affirm the judgment of the circuit court of Cook County.

Affirmed.

MEJDA, P.J., and SULLIVAN, J., concur.