**John G. ARMSTRONG, Plaintiff,**

v.

**UNITED AIRLINES, INC., Defendant.**

**No. 93 C 6921.**

United States District Court,
N.D. Illinois,
Eastern Division.

May 2, 1995.

---

John G. Armstrong, Chicago, IL, pro se.

Philander Scott Neville, Jr., Robert M. Hodge, Chicago, IL, for plaintiff John G. Armstrong.

Roger L. Taylor, John Robert Robertson, Kirkland & Ellis, Chicago, IL, for defendant United Airlines, Inc.

### OPINION AND ORDER

NORGLE, District Judge:

Before the court is the motion of Defendant United Airlines, Inc. ("United") for summary judgment. For the following reasons, the motion is granted.

1. The following facts are drawn from the parties' submissions pursuant to Local Rules 12(M) and 12(N) of the United States District Court for the Northern District of Illinois and the accompanying exhibits.

2. In an affidavit, Maddox states that she approved all of the actions, decisions, meetings,

*FACTS* [1]

United, a Delaware corporation, employed Plaintiff from July 31, 1989, until March 23, 1994, when he was involuntarily discharged. Plaintiff was hired as a Senior Staff Specialist in United's Corporate Training Department. Plaintiff's duties included the design and production of employee training materials. Daniel Kafcas, a now deceased white male, was Plaintiff's immediate supervisor until March 1993 when Dennis Armstrong ("D. Armstrong"), a white male, replaced Kafcas. Chaille Maddox, an African–American female, is the Director of Corporate Training.[2] Plaintiff claims that the above named supervisors discriminated against him on the basis of his race, African–American, and gender, male, in that he was allegedly not allowed to transfer to other positions, not promoted or awarded for his participation in a project called the FOCUS project, not given opportunities in the Training Department, demoted, and eventually terminated from United. Plaintiff further alleges that many of these events occurred in retaliation for filing claims of discrimination against United. In addition, plaintiff contends that D. Armstrong intended to inflict emotional distress on him.

In 1989, shortly after joining United, Plaintiff worked on a training project called FOCUS for a few months until January of 1990. Other United employees participated in the project for as long as three or four years. Four individuals who worked on the project through its duration received an award. Plaintiff was among those employees, many of whom were white, who did not receive an award. In his first performance review, which covered January 1989 through December 1989, Plaintiff was generally rated as "effective," [3] but was criticized for problems he had in achieving consistent accuracy in the FOCUS project.

evaluations, or memoranda made by Armstrong's direct supervisors in the Training Department.

3. Overall performance ratings were divided into two categories, Responsibilities and Management Skills. In each category, an employee could be graded as follows: (1) Outstanding; (2) Highly effective; (3) Effective; (4) Needs improvement; and (5) Unacceptable.

In 1990, both Plaintiff and a non-black male, Mark Produce ("Produce"), interviewed for the same position with United in Denver, Colorado. However, neither Plaintiff nor Produce were ever transferred to that job.[4] In a memorandum dated October 18, 1990, Kafcas discussed specific aspects of Plaintiff's performance that were, in his view, "unsatisfactory." Kafcas warned that Plaintiff's failure to improve could lead to dismissal.[5] A memorandum dated November 13, 1990, signed by Plaintiff, also discusses the need for Plaintiff to improve his job performance.

In his annual performance review for 1990, Plaintiff received an overall rating of "needs improvement" in both the Responsibilities and Management Skills categories. The evaluation was based on his work on two projects, Flight Dispatch and Account Services Representative Training. Although Plaintiff received a "highly effective" rating for the first project, his work on the second project was given an "unsatisfactory" rating. In June 1991, Plaintiff met with Scott Gilday, Employee Services Manager, to discuss matters presented in an agenda written by Plaintiff which raised questions about the 1990 Denver transfer, his poor performance reviews, and promotional opportunities for himself and for minority males as a group.

At the end of 1991, Plaintiff's performance rating dropped to "unacceptable" for Management Skills and did not improve from the "needs improvement" evaluation Plaintiff received the previous year in the Responsibilities category. In particular, Plaintiff was informed that although he had "talent" and "a strong desire to do well," his performance fell far short of the expectations associated with his position. On March 5, 1992, Plaintiff was demoted from the Senior Staff Specialist position to the position of Staff Specialist.

On March 14, 1992, Plaintiff filed his first EEOC charge. In his 1992 performance review, Plaintiff received better overall ratings from his supervisors than in the previous year, going from "unacceptable" to "needs improvement" in the Management Skills area and from "needs improvement" to "effective" in the Responsibilities area. Additionally, Kafcas commented that although Plaintiff demonstrated a willingness to meet deadlines, he continued to be unreceptive to constructive feedback.

Beginning in late July 1993, a flurry of memoranda written by D. Armstrong and plaintiff chronicle an intense conflict between the two over the plaintiff's job duties and performance. On August 9, 1993, Plaintiff filed a second EEOC charge alleging retaliation for filing his prior charge. On August 13, 1993, Plaintiff applied for a job opening in San Francisco. Throughout 1993, the friction between D. Armstrong and plaintiff continued.

On March 7, 1994, D. Armstrong and Maddox met with Plaintiff to discuss his 1993 performance review. Plaintiff's 1993 overall job performance was given an "unacceptable" rating in the Management Skills area and a "needs improvement" rating in the Responsi-

---

4. The parties offer contradictory versions of the events surrounding Armstrong's interview in Denver. In his deposition, Armstrong testified that he was interviewed by Captain Bob Smith, a pilot, and Dave Kolakowski, a manager of Denver training. Armstrong further testified that Kolakowski offered him the job, which he accepted, and sent a transfer requisition for Armstrong to Chicago. Armstrong claims that his supervisors in Chicago deliberately failed to act on the transfer. However, in an affidavit, Maddox asserts that no one at United ever denied or disapproved any transfer of Armstrong to Denver because such transfer never existed.

United did not raise a timing issue; however, the 1990 Denver transfer may not be a timely charge if Armstrong knew on or before May 19, 1991, that he would not be transferred. However, even assuming all procedural requirements have been met, it is not necessary to resolve the disputed facts in order to decide the motion for summary judgment. Put simply, Armstrong has not articulated the relevance of any of these events to the issue of race or gender discrimination.

5. Plaintiff admits that the memo says what it says, but he denies the truth of those statements. In support, Armstrong cites his deposition testimony which seems to suggest that Kafcas may have been upset at Plaintiff because he broke the chain of command when pursuing his transfer to Denver. (Arm.Dep. 33–36.) This is presumably offered as evidence of Kafcas' animosity towards Armstrong. However, Armstrong fails to explain why this should be considered as evidence that Kafcas was motivated by Armstrong's race or gender.

bilities area, a decline from the 1992 review. Plaintiff was criticized additionally for punctuation and grammatical errors in various projects. Plaintiff was informed that failure to improve his performance "may result in disciplinary action, up to and including dismissal." On March 24, 1994, Plaintiff was terminated from his employment at United. On March 29, 1994, Plaintiff filed his third EEOC charge.

Plaintiff filed this action on November 12, 1993. The complaint has since been amended and currently consists of six counts. Counts one and three allege a cause of action for disparate treatment based on race under § 1981 and Title VII respectively. Counts two and five allege a claim for retaliation for filing charges of discrimination under § 1981 and Title VII respectively. Count four alleges a claim under Title VII for disparate treatment based on gender. Count six alleges an Illinois common law claim for intentional infliction of emotional distress.

## DISCUSSION

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Capital Options Invs., Inc. v. Goldberg Bros. Commodities, Inc.,* 958 F.2d 186, 188 (7th Cir.1992). Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Beraha v. Baxter Health Care Corp.,* 956 F.2d 1436, 1440 (7th Cir. 1992), presenting only a scintilla of evidence will not suffice to oppose a motion for summary judgment. *Brownell v. Figel,* 950 F.2d 1285, 1289 (7th Cir.1991). Moreover, the disputed facts must be those that might affect the outcome of the suit to properly preclude summary judgment. *First Ind. Bank v. Baker,* 957 F.2d 506, 508 (7th Cir.1992). A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Accordingly, the non-moving party is required to go beyond the pleadings with affidavits, depositions, answers to interrogatories, and admissions on file designating specific facts to show a genuine issue for trial. *Bank Leumi Le-Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991).

■ To establish a genuine issue for trial in the Northern District of Illinois, the non-moving party must strictly adhere to the requirements of Rule 12(N) of the Rules of the United States District Court for the Northern District of Illinois ("Local Rules"). Compliance with the Rule 12(N) is required in order to apprise the court that a fact issue indeed exists. Rule 12(N) is unambiguous; it requires the non-moving party to file "a concise response to the movant's [Local Rule 12(M)(3) ] statement that shall contain ... a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon ..." Local Rule 12(N)(3)(a).

Local Rule 12(N) has been regularly applied by this court, *see, e.g., Iowa Ham Canning, Inc. v. Handtmann, Inc.,* 870 F.Supp. 238, 245 (N.D.Ill.1994); *Sledd v. Lindsay,* 864 F.Supp. 819, 826 (N.D.Ill.1994), and the Seventh Circuit has consistently upheld strict application of that rule. *See Rosemary B. v. Board of Educ.,* No. 94–3406, 1995 WL 156912, at *2, 52 F.3d 156, 159 (7th Cir. Apr. 7, 1995); *Johnson v. Gudmundsson,* 35 F.3d 1104, 1108 (7th Cir.1994); *Flaherty v. Gas Research Inst.,* 31 F.3d 451, 453, 455 n. 4 (7th Cir.1994); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921–22 (7th Cir.1994); *Highlands Ins. Co. v. Lewis Rail Serv. Co.,* 10 F.3d 1247, 1251 n. 6 (7th Cir.1993); *Stewart v. McGinnis,* 5 F.3d 1031, 1034 (7th Cir.1993); *Tobey v. Extel/JWP, Inc.,* 985 F.2d 330, 333 (7th Cir.1993); *Valenti v. Qualex, Inc.,* 970 F.2d 363, 368–69 (7th Cir.1992); *Maksym v. Loesch,* 937 F.2d 1237, 1240–41 (7th Cir.1991); *Appley v. West,* 929 F.2d 1176, 1179–80 (7th Cir.1991); *Bell, Boyd & Lloyd v. Tapy,* 896 F.2d 1101, 1102–03 (7th Cir.1990).

▆ Yet, in many cases the party opposing the motion has failed to comply with Rule 12(N) resulting in material facts being admitted. *See Early v. Bankers Life & Casualty Co.*, 853 F.Supp. 1074, 1079 (N.D.Ill.1994); *Keller v. Samuel*, 1994 WL 577212, at *3 (N.D.Ill. Oct. 18, 1994). It is well established that any facts asserted by the movant in the 12(M)(3) statement are deemed admitted unless the opposing party contradicts them in the manner specified under Local Rule 12(N)(3)(a). *Knox v. McGinnis*, 998 F.2d 1405, 1408 n. 8 (7th Cir.1993). A mere disagreement with the movant's asserted facts is inadequate if made without reference to supporting material. *Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir.1993).

Local Rule 12(M)(3) requires the moving party to support its statements of material fact with citations to discrete sections in the record. In compliance with Rule 12(M), United identifies supporting portions of affidavits, depositions, and other exhibits for each of its assertions. Therefore, the court may deem United's statements admitted unless Plaintiff properly contradicts them. *See Knox*, 998 F.2d at 1408 n. 8; *Stewart*, 5 F.3d at 1034.

▆ Plaintiff failed to contradict the material facts set forth in paragraphs 22, 32–35, 39–41, and 43 of United's Rule 12(M) statement. Although Plaintiff responded to each of these paragraphs, he failed to refer the court to anything in the record that would support his denial. A mere denial of the movant's asserted facts is insufficient to comply with Rule 12(N) if made without reference to supporting material, or made with incorrect reference. *Bell, Boyd & Lloyd*, 896 F.2d at 1103. Therefore, the court will deem United's factual statements in those paragraphs cited above as admitted.

▆ In paragraph 39, Plaintiff admits that the decisions of his supervisors regarding his pay, promotion, demotion, job opportunities, and termination were based solely on his performance and upon no other factor.

This admission is fatal to Plaintiff's claims of race and sex discrimination because he concedes that no impermissible factor motivated the employment decisions made by his supervisors. For a plaintiff to prevail under a disparate treatment theory, there must be proof of "intent to discriminate" on the basis of race, color, religion, sex, or national origin.[6] 42 U.S.C. § 2000e–2. Without proof of discriminatory intent, Plaintiff cannot proceed with his claims under § 1981 and Title VII.

▆ Alternatively, United is also entitled to summary judgment because Plaintiff failed to carry his initial burden of establishing a *prima facie* case of discrimination. Where there is no direct evidence of discrimination, as in this case, the plaintiff may rely on circumstantial evidence under the burden-shifting method as outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). There are three phases to this method of proof. In the first phase, the plaintiff must establish a prima facie case by demonstrating four elements: (1) he belongs to some protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) his employer treated similarly situated employees outside his classification more favorably. *Hughes v. Brown*, 20 F.3d 745, 756 (7th Cir.1994). The establishment of the *prima facie* case creates a rebuttable presumption that the employer unlawfully discriminated and it shifts the burden of production to the employer. *Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

▆ The burden that shifts to the employer is not onerous; it is merely to articulate, through the presentation of admissible evidence, a legitimate, nondiscriminatory reason for the plaintiff's treatment. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The presumption is rebutted if the reason "would allow the trier of fact rational-

---

6. The models and standards of proving illegal motive developed in Title VII jurisprudence also apply to claims under § 1981. *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Therefore, the court's Title VII analysis applies to Armstrong's claims under § 1981 as well.

ly to conclude that the employment decision had not been motivated by discriminatory animus." *Id.* If the employer fails to offer a legitimate reason for its decision, judgment must be entered against the employer.

If, however, the employer satisfies the second phase, the rebuttable presumption is dissolved and the burden reshifts to the plaintiff to carry the ultimate burden of persuading the trier of fact that the employer intentionally discriminated. *Id.* Thus, the third phase requires the plaintiff to show that the employer's proffered reason is a mere pretext for discrimination. To meet this burden, the plaintiff may either present evidence that a discriminatory reason more likely motivated the employer or that the purported explanation is unworthy of credence. *Id.*

Plaintiff has failed to establish elements two and four of his prima facie case.[7] In his performance evaluations, Plaintiff failed to achieve an overall "effective" rating in both job categories in any year after 1989. According to Kafcas, Plaintiff was able to achieve project expectations only with the extensive help from project coordinators. Moreover, it is uncontested that his work contained spelling and grammatical errors. Indeed, Plaintiff was warned as early as 1991 that failure to improve his performance could cause disciplinary action up to or including dismissal. The evidence thus reveals that Plaintiff was not performing his job satisfactorily.

In his brief, Plaintiff contends that his performance was better than his supervisors reported. The totality of the evidence supporting Plaintiff's contention consists of: (1) his deposition testimony that other United employees thought highly of his work; (2) his own unsworn letter dated April 10, 1992, entitled "Performance Review Rebuttal—Personal Statement"; and (3) examples of several projects which met or exceeded expectations. However, these submissions are insufficient to create a genuine issue of material fact.

The perceptions of other employee's are not relevant to whether Plaintiff performed his duties satisfactorily to meet United's expectations because the relevant expectation is the expectation of the employer. *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125 (7th Cir.1994). Furthermore, Plaintiff's statements regarding his own view of his performance are also irrelevant. *Gustovich v. AT & T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir.1992) ("An employee's self-serving statements about his ability ... are insufficient to contradict an employer's negative assessment of that ability"); *Sample v. Aldi Foods, Inc.*, No. 93–3094, 1994 WL 374231 (N.D.Ill. July 14, 1994) ("Personal evaluations of one's own work performance are not relevant").

Since United has supported the reason for its decision to fire Plaintiff with admissible evidence, Plaintiff must offer evidence that his supervisors did not honestly believe that his performance was poor. *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir.1992) ("[T]he issue of pretext focuses on the question of whether the employer honestly believes in the reasons it asserts"). Plaintiff has failed to make such a showing. The fact that Plaintiff received positive comments on some of his projects is uncontroverted and is reflected in his performance evaluations. Thus, Plaintiff has failed to offer sufficient evidence either to support the second element of his *prima facie* case or to demonstrate that United's proffered reasons for its decisions were a pretext for discrimination.

Plaintiff has also failed to adduce any evidence to prove the fourth element of his prima facie case, that others outside of the protected class were treated more favorably. It is uncontested that during Plaintiff's employment at United, within the Training Department alone, at least one white male was demoted for poor performance and at least one white female was discharged for poor performance. Moreover, the only person that Plaintiff attempts to compare himself to is Pat Berry ("Berry"), a white male, who made the same mistake as Plaintiff in filming

---

7. Since United has proffered poor performance as one reason for its actions, the analysis of pretext is intertwined with the second element of Armstrong's prima facie case.

a training video. Plaintiff claims that he was demoted for making this mistake while Berry was not. However, Plaintiff admits that Berry's performance was, in every respect, superior to his. (Def.'s Rule 12(M) Statement, ¶ 18; Pl.'s Response.) *See Rush v. McDonald's Corp.*, 966 F.2d 1104, 1114 n. 38 (7th Cir.1992) ("The same conduct, which might merely result in a warning for an employee whose work was satisfactory, might be the final straw, resulting in discharge, for the marginal employee.").

 Furthermore, Berry's supervisor had to have known about Berry's mistake for it to be material to the analysis here. *See Friedel v. City of Madison*, 832 F.2d 965, 974 (7th Cir.1987). There is no evidence that would even suggest that a supervisor was aware that Berry had erred in making the training video. In fact, Plaintiff testified in his deposition that Berry's mistake occurred a year after Plaintiff's when he was under a different supervisor. Thus, Plaintiff has failed to present evidence from which a reasonable jury could conclude that he was treated differently from similarly situated employees outside his protected class.[8]

With respect to the claim for intentional infliction of emotional distress under Illinois law, Plaintiff has not presented evidence that his supervisor's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 702 (7th Cir.1993) (upholding this court's dismissal of claim under similar facts). Moreover, Plaintiff admits that D. Armstrong did not intend to

cause him emotional distress. (Def.'s Rule 12(M) Statement, ¶ 46; Pl.'s Response.) Thus, United is entitled to summary judgment on the pendent state law claim.[9]

## CONCLUSION

For the foregoing reasons, the motion of United for summary judgment is granted.

IT IS SO ORDERED.

---

8. Plaintiff makes no cognizable argument for a claim of retaliation in his brief. To establish a *prima facie* case of retaliation under Title VII, Armstrong must establish that "there is a causal link between the protected expression and the adverse action." *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1313 (7th Cir.1989). Armstrong does not attempt to show a time-sequence causation between the filing of a discrimination charge and a decision by United. Moreover, as previously discussed, Armstrong has admitted that United based its decisions solely on his performance. Therefore, summary judgment is warranted in favor of United on Armstrong's retaliation claims.

9. United also argues that it had an independent ground for discharging Plaintiff because he false-

ly stated that he had a Master's degree in his initial application for employment and later in an application for an internal transfer. However, the Supreme Court recently held in *McKennon v. Nashville Banner*, — U.S. ——, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), that after-acquired evidence cannot be used by an employer to bar all relief. Rather, when the employer discovers that the plaintiff falsified an employment application or committed some kind of misconduct, the after-acquired evidence doctrine operates only to limit the remedy. *Id.* at ——, 115 S.Ct. at 886. Therefore, such evidence was not considered by the court for the purposes of deciding the instant motion for summary judgment.